**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ROYCE LACKEY,

    Plaintiff,

vs.

                CIV No. 12-902 LH/RHS

HOMESITE INSURANCE COMPANY

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Plaintiff's Motion Dismiss Count V of Complaint (Doc. 24), filed February 8, 2013.  The Court, having considered the motion, the briefs of the parties, and the applicable law, concludes that the motion to dismiss is **well-taken** and will be **granted**.

**I.  INTRODUCTION AND BACKGROUND**

    Plaintiff filed his Complaint against Defendant Homesite Insurance Company ("Defendant") in the Second Judicial District Court in Bernalillo County, New Mexico, asserting claims for breach of contract, breach of the duty of good faith and fair dealing, a violation of the Insurance Code Trade Practices and Frauds Act, NMSA 1978, §§ 59A-15-1, *et. seq.*, a violation of the Unfair Practices Act, NMSA 1978 §§ 57-12-1 *et. seq.*, and negligence.  (Plaintiff's Complaint (Doc. 1, Ex. A) ("Pl.'s Compl.") at 3-7.)  Defendant then removed the matter to this Court on August 22, 2012, asserting federal subject matter jurisdiction on the basis of diversity of citizenship.  (Notice of Removal (Doc. 1).)

The following facts are taken from Plaintiff's proposed amended complaint[1] and are construed in the light most favorable to Plaintiff for purposes of the instant motion:

Defendant issued Plaintiff a homeowner's insurance policy, No. 30961967, to insure his home and related dwellings, which was in effect on November 13, 2010.  (Plaintiff's proposed amended complaint (Doc. 26, Ex. A) ("Pl.'s Prop. Am. Compl.") at ¶¶ 6, 8.)  On or about November 13, 2010, two armed men forced their way into his home and detained him at gunpoint for over an hour while they "ransacked and robbed [his] home" and injured him.  (*Id*. at ¶ 11-12.)  Thereafter, Plaintiff made a timely claim with Defendant for losses sustained during the armed robbery, and Defendant issued Plaintiff a "partial payment" for his losses on or about January 6, 2011, in the amount of $2,987.58.  (*Id*. at ¶ 13-14.)  Plaintiff contacted Defendant in January and February of 2011, regarding outstanding compensation owed by Defendant but that Defendant did not communicate with him after February 2011, or provide the replacement cost coverage for Plaintiff's loss.  (*Id*. at ¶ 15-17.)  Plaintiff's counsel sent three letters to Defendant, on April 18, 2011, June 1, 2011, and July 25, 2011, but Defendant has not responded to such correspondence.  (*Id*. at ¶ 18.)

## II. LEGAL STANDARD

Although Defendant entitles its motion "Defendant's Motion to Dismiss Count V of Complaint," it moves for dismissal under Federal Rule of Civil Procedure 12(c).  (*See* Doc. 24, at 1.)  Rule 12(c) provides that, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6)

---

[1] As discussed herein, *see infra* Part III, at 4, Plaintiff asks the Court in his response brief to grant him leave to amend his Complaint.  Plaintiff's proposed amended complaint is attached to his response as Exhibit A and is addressed in Defendant's reply brief.  For efficiency's sake, the Court has considered the amended allegations in Plaintiff's proposed amended complaint for purposes of Defendant's motion to dismiss.

motion to dismiss. *Mock v. T.G.&Y.*, 971 F.2d 522, 528 (10th Cir. 1992). Thus, a court assumes the veracity of the "well-pleaded factual allegations" in the complaint and draws all reasonable inferences in the plaintiff's favor. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must contain enough facts to support a claim for relief that is plausible on its face. *Id*. at 570. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

In its motion, Defendant contends that Plaintiff's negligence cause of action fails to state a claim for relief as a matter of law. More specifically, it argues that while New Mexico recognizes a *bad-faith* failure to settle claim, there is no cause of action in New Mexico for *negligent* failure to settle. Instead, Defendant suggests that an insurer's negligence in processing an insurance claim is simply one means of demonstrating an insurer's bad faith.

In response, Plaintiff first urges the Court to reserve judgment on the legal sufficiency of his negligence claim until such time as he has filed an amended complaint.[2] Plaintiff represented in his response brief that he was prepared to file an amended complaint, which would amend his negligence claim, setting out "in greater detail the basis of his negligence and negligence per se claims." (Doc. 26, at 4.) He noted, however, that he had not yet sought leave from the Court to amend, because he also intended to add an additional party and considered it more efficient to

---

[2] Plaintiff asserts that he would have filed an amended complaint in State Court, pursuant to a State Court order granting permission to do so, were it not for Defendant's removal of this matter to Federal Court. Plaintiff claims that he "was prevented by a procedural technicality of one day from filing his amended complaint before removal." (Doc. 26, at 4.) However, because Plaintiff did not move to amend his complaint in Federal Court, it is of no consequence that the State Court may have mistakenly attempted to grant leave for the filing of Plaintiff's amended complaint *after* this Court assumed jurisdiction over the matter by reason of its removal.

amend only once. (*Id.*) According to Plaintiff's response brief, he was awaiting discovery responses from Defendant, due March 1, 2013, which would contain the identity of the additional party that he sought to join in an amended complaint. (*Id.*) Plaintiff, nevertheless, attached a proposed amended complaint to his response brief and asked the Court to grant him leave to amend. (*Id.*)

Certificates of Service filed with this Court suggest that Defendant served responses to Plaintiff's discovery requests in early March and again in mid-April. (*See* Docs. 27, 39.) Plaintiff's deadline for amending his Complaint and adding additional parties passed on April 12, 2013, without Plaintiff seeking leave to amend his complaint to add any additional parties. (*See* Doc. 19.)

In its reply brief, Defendant addresses the amendments contained in Plaintiff's proposed amended complaint, arguing that certain amended claims should be stricken as duplicative and that Plaintiff's amendment is futile because New Mexico does not recognize a cause of action for negligent failure to settle. (Doc. 30, at 6, 7.) Because Defendant has taken the opportunity to respond to Plaintiff's proposed amended complaint, the Court will treat the request within Plaintiff's response brief as a motion for leave to amend and Defendant's response within its reply brief as an objection on the basis of futility.

With regard to the merits of Defendant's motion, Plaintiff maintains that he has pled a valid cause of action for negligence. First, he argues that Defendant has incorrectly characterized his claim as a "negligent failure to settle" claim, when it is actually "a first-party claim against an insurer for negligence in the way it dealt with its insured." (Doc. 26, at 5.) He contends that the cases upon which Defendant relies do "not suggest that other negligence actions against insurers are prohibited" under New Mexico law. (Doc. 26, at 5.) Plaintiff also

argues that "New Mexico has indicated that an insurer may owe a duty of reasonable care to an insured that is independent of any duty arising out of the insurance contract." (*Id.*) (citing *Cottonwood Enterprises v. McAlpin*, 810 P.2d 812, 815 (1991)).

First, the Court agrees with Defendant that negligence claims for "failure to settle" are not cognizable against an insurer under New Mexico law. *See Hemphill v. Liberty Mut. Insur. Co.*, No. 10cv861 LH/RHS, at 4 (D.N.M. Oct. 23, 2012). On the other hand, the Court also agrees with Plaintiff that the factual scenario here is distinguishable from the typical "failure to settle" fact pattern in which an insurance company fails to settle a third-party lawsuit against its insured. *See, e.g., Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 232 (N.M. 2004) (describing "failure to settle cases" as "those arising from a breach of the insurer's duty to settle a third-party claim against the insured in good faith"). In the Court's view, Plaintiff's negligence claim is more accurately characterized as a negligent failure to pay claim. (*See* Pl.'s Prop. Am. Comp., at ¶ 49.)

However, a review of New Mexico statutory law and case law suggests that the factual distinctions between failure to pay cases and failure to settle cases may be without a significant legal difference. Indeed, the New Mexico Uniform Jury Instructions for "bad faith failure to pay" and "bad faith failure to settle" impose virtually the same standard of conduct upon insurers, the former imposing a duty to "act reasonably under the circumstances to conduct a timely and fair investigation/evaluation of the claim," and the latter imposing a duty to "timely investigate and fairly evaluate the claim of [the] insured." *Compare* UJI, NMRA 13-1702 *with* UJI, NMRA 13-1704. Similarly, New Mexico courts have discussed the same duty upon insurers -- to give equal consideration to its own interests and those of its insured -- in both failure to pay and failure to settle cases. *See Jessen v. Nat'l Excess Ins. Co.*, 776 P.2d 1244,

1247 (N.M. 1989) (failure to pay case); *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 690 P.2d 1022, 1026 (N.M. 1984) (failure to settle case).

In analyzing Plaintiff's negligence claim, the Court notes that it would be too broad a statement of law to declare that an insured may never sue their own insurer for negligence under New Mexico law. After all, New Mexico courts have in limited situations recognized certain negligence claims against insurers. For example, in *Stock v. ADCO General Corporation*, 632 P.2d 1182 (N.M. Ct. App. 1981), the New Mexico Court of Appeals recognized a negligence claim for the failure to procure proper insurance. *Id*. at 1185. There, the court noted that the insurer's and its general agent's negligent conduct included "issuing a policy that deviated from the one applied for." *Id*. Nevertheless, based upon the Court's own research and the representations of counsel, New Mexico courts have not directly or expressly addressed the viability of the type of negligence action at issue here: a first-party negligence claim by an insured against his insurer for failure to pay benefits under an insurance contract. Yet the fact that New Mexico courts, and at least one federal court applying New Mexico law, have *not* discussed the viability of such a claim provides passive support for Defendant's position that no such claim is available.

In *Hauff v. Petterson*, 755 F. Supp. 2d 1138 (D.N.M. 2010), Judge Paul Kelly, Jr. discussed the duty of an insurer to its insured in the context of a "failure to pay" claim. He reasoned that the plaintiff, to survive summary judgment, had to cite evidence showing that the insurer's actions were based on a "dishonest judgment" and that it "failed to honestly and fairly balance its own interests." *Id*. at 1145 (citing *Sloan*, 85 P.3d at 237 and UJI, NMRA 13-1701 to 13-1718). Concluding that an insurer acts in bad faith when its reasons for denying or delaying payment are "frivolous or unfounded," Judge Kelly noted that the liability of an insurer cannot

rest on a merely "erroneous or incorrect" refusal to pay.  *Id*.  Judge Kelly's reasoning suggests that the court did not consider *negligent* failure to pay a cognizable cause of action under New Mexico law.

In *Jessen v. National Excess Insurance Company*, another first-party bad faith failure to pay case, the New Mexico Supreme Court affirmed the trial court and noted that New Mexico recognizes "the tort of bad faith in an insurer's refusal to pay a first party claim," saying nothing of the tort of *negligence* in failing to pay such a claim.  *See id.* at 1246 n.2 (citing *State Farm Gen'l Insur. Co. v. Clifton*, 527 P.2d 798, 800 (1974)).  Additionally, in *Sloan v. State Farm Mutual Automobile Insurance Company*, the New Mexico Supreme Court characterized "failure-to-pay cases" as "those arising from a breach of the insurer's duty to timely investigate, evaluate, or pay an insured's claim in *good faith*."  *Sloan,* 85 P.3d at 232 (emphasis added).  The court reasoned that in failure to settle claims, "evidence of an insurer's negligence in researching a claim does not give rise to its own cause of action, but rather provides one possible means of demonstrating that an insurer acted in bad faith."  *Id*. at 237.  It went on to conclude that "if the insurer fails to meet 'basic standards of competency' in investigating a claim or researching the applicable law, such conduct is 'strong evidence' of bad faith, but is not in itself sufficient to support the plaintiff's bad faith claim."  *Id*. at 238.

In sum, New Mexico courts' failure to recognize the viability of a *negligent* failure to pay claim, in combination with the proposition that the mere failure to timely pay an insurance claim may itself be one possible means of demonstrating bad faith, suggests that a *bad faith* failure to pay claim is the only variety of a failure to pay claim available to insureds under New Mexico law.

Plaintiff relies upon *Cottonwood Enterprises v. McAlpin*, 810 P.2d 812 (N.M. 1991) for

the proposition that an insurer may owe a duty of reasonable care to an insured independent of any duties arising out of the insurance contract. *Cottonwood* involved a specific provision within the New Mexico Title Insurance Law, § 59A-30-11(A), which the New Mexico Supreme Court determined imposed a duty of reasonable care upon title insurance agents. *Cottonwood*, 810 P.2d. at 815. The present case is distinguishable from *Cottonwood*, because it does not involve the discrete area of title insurance; nor does it involve the same statutory provisions. *See id.* (referencing provisions of the New Mexico Title Insurance Law, § 59A-30-11(A)); *see also* NMSA 1978, § 59A-30-2(A) (indicating that the purpose of the New Mexico Title Insurance Act is to provide a comprehensive body of law for the regulation and supervision of the business of title insurance). Though *Cottonwood* established that the New Mexico Title Insurance Law imposes a negligence standard upon title insurers, it does not follow therefrom that a negligent failure to pay action is cognizable against insurers under New Mexico law.

Further, the Court agrees with Defendant that the Insurance Trade Practices and Frauds Act ("Insurance Code") does not create a *negligence* cause of action against insurers. Instead, a cause of action under § 59A-16-20 of the Insurance Code is grounded in bad faith rather than negligence. After all, the commentary for the Uniform Jury Instruction for a violation of the Insurance Code, UJI, NMRA 13-1706, suggests that § 59A-16-20 of the Insurance Code, which defines unfair and deceptive claims practices, is the section of the Act that is "most directly relevant to 'bad faith.'" UJI 13-1706, Committee Commentary. It is also noteworthy that the jury instruction for the Insurance Code claims appears within the bad faith section of the uniform jury instructions. In sum, a negligence cause of action does not arise from a duty imposed by the Insurance Code.

Significantly, Plaintiff does not cite to any New Mexico case suggesting that New

Mexico courts are on the brink of extending existing law to recognize a cause of action for negligent failure to pay against insurers. Instead, the rationale of the courts in the cases discussed herein suggests otherwise. Finally, from a policy perspective, there is no apparent policy reason that New Mexico courts would recognize a separate tort action flowing out of an insurance contract for negligent failure to pay, when an insured already has at its disposal causes of action for breach of contract, for bad faith failure to pay, and for violation of the Insurance Code. *See* UJI, NMRA 13-822; 13-1702; 13-1706.

Finally, in Count VI of his proposed amended complaint Plaintiff also asserts a negligence per se claim against Defendant predicated upon Defendant's violation of the Insurance Code and the Unfair Practices Act ("UPA"). Plaintiff makes the same allegations in Counts III and IV of his existing complaint, where he alleges direct violations of the Insurance Code and UPA. Significantly, negligence per se "is a method of proving negligence where a cause of action already exists." *Garcia v. Rodey, Dickason, Sloan, Akin & Robb*, 750 P.2d 118, 123-24 (N.M. 1988). Given the Court's conclusion herein that an insured may not state a cause of action against his insurer for negligent failure to pay, Plaintiff's attempt to state a cause of action for negligence per se is likewise futile.

## IV. CONCLUSION

The Court concludes for the reasons stated herein that Plaintiff has failed to state a claim for negligence or for negligence per se.

**WHEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Count V (Doc. 24) is **well-taken** and is now hereby **granted.**

**IT IS FURTHER ORDERED** that Plaintiff's claims for **negligence** and **negligence per se** are hereby **dismissed**.

**IT IS FURTHER ORDERED** that Plaintiff's request to amend his complaint is **denied as futile.**

**IT IS SO ORDERED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE